```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION

ANDREAS MATTHIES and ANNA
MATTHIES,

          Plaintiffs,

v.                                Case No:  2:25-cv-17-JES-KCD

FIRST COMMUNITY INSURANCE
CO.,

          Defendant.
```

## OPINION AND ORDER

This matter comes before Court on the Rule 12(b)(6) Motion to Dismiss (Doc. #14) filed by Defendant First Community Insurance Co. ("FCIC") against the operative Complaint (Doc. #9.) Plaintiffs Andreas and Anna Matthies ("Plaintiffs") were given an extension to file a Response in Opposition (Doc. #19), but failed to do so.

This is a contract dispute between homeowners/insureds (Plaintiffs) and their insurance company (FCIC), which issued a federal flood insurance policy covering their residence. The residence was damaged by flooding during Hurricane Ian. FCIC paid an amount less than the full coverage available under the Policy. Plaintiffs sued FCIC for additional payments. FCIC moves to dismiss under Rule 12(b)(6), arguing that Plaintiffs' suit was filed too late and is barred by the statute of limitations. For the reasons set forth below, the motion is **GRANTED.**

I.

Under Rule 12(b)(6) a district court considers the factual allegations in the complaint and exhibits attached to the complaint or incorporated into the complaint by reference. MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (citation omitted); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). A court may also consider evidence outside the complaint if the evidence satisfies the incorporation-by-reference doctrine or is properly subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Swinford v. Santos, 121 F.4th 179, 187-88 (11th Cir. 2024).

Under the former doctrine, extrinsic material referenced in a complaint and attached to a motion to dismiss may be considered if (1) it is central to the plaintiff's claim and (2) its authenticity is unchallenged. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Jackson v. City of Atlanta, Georgia, 97 F.4th 1343, 1350 (11th Cir. 2024). However, when the latter two prongs are met, extrinsic materials may be considered even if not mentioned in, nor attached to, a complaint. Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); Julmist v. Prime Ins. Co., 92 F.4th 1008, 1016 (11th Cir. 2024) (affirming a district court's consideration of an insurance policy that an insurer attached to a motion to dismiss).

**II.**

Plaintiffs' home in Fort Myers, Florida was insured by Policy No. 09-6820168781-05 (the "Policy"), a Standard Flood Insurance Policy ("SFIP") issued by FCIC. (Doc. #9, p. 2.) FCIC is a Write-Your-Own ("WYO") insurance carrier, and issued the Policy pursuant to the National Flood Insurance Program ("NFIP"). (Doc. #14-1, ¶ 3.) The Federal Emergency Management Agency ("FEMA") administers the NFIP pursuant to the National Flood Insurance Act ("NFIA").[1]

Under the Policy, FCIC agreed to pay for losses caused by flood damage, and Plaintiffs agreed to strictly comply with SFIP requirements, including those governing the time to file suit. (Id. at ¶¶ 6, 7.) The Policy provided building coverage of $250,000 (with a $1,250 deductible) and contents coverage of $100,000 (with a $1,000 deductible). (Id. at ¶ 6.)

On September 28, 2022, Plaintiffs' residence was damaged by flooding from Hurricane Ian. (Doc. #9, ¶ 8; Doc. #14-1, ¶ 8.)

---

[1] Congress enacted the NFIA in 1968 to provide affordable flood insurance in areas where it is uneconomical for the private market to do so. Fla. Key Deer v. Paulison, 522 F.3d 1133, 1136 (11th Cir. 2008). The NFIA authorizes FEMA to establish and administer the NFIP. Id. FEMA uses WYO companies like FCIC to assist in the issuance and administration of SFIPs. Newton v. Capital Assur. Co., 245 F.3d 1306, 1308 (11th Cir. 2001). As "fiscal agents" of the United States, WYO companies must strictly adhere to SFIP requirements and adjust claims in accordance with NFIP guidelines. Id. at 1311-12. Also, "the insured must adhere strictly to the requirements of the [SFIP] before any monetary claim can be awarded against the government." Sanz v. U.S. Security Inc., Co., 328 F.3d 1314, 1318 (11th Cir. 2003).

Although the record does not establish a date or the details, the Complaint asserts that Plaintiffs "promptly reported" the loss to FCIC.  (Doc. #9, ¶ 18.)  FCIC does not contest that assertion.

On October 6, 2022, FEMA's Acting Assistant Administrator issued FEMA Memorandum W-22012.[2]  Under that Memorandum, FCIC was required to exercise its option to accept an unsigned adjuster's report in lieu of a signed proof of loss.[3]

FCIC assigned an insurance adjuster to inspect Plaintiffs' residence.  (Doc. #14-2.)  The adjuster prepared an estimate of the damage that FCIC used to evaluate and pay the claim.

On March 1, 2023, FCIC sent Plaintiffs a Letter (the "March 2023 Letter").  It stated, "[w]e have exercised our option to accept your adjuster's report of your flood loss instead of signed proof of loss to evaluate and pay your claim."  (Id. at 2.)  It then explained FCIC's determination that Plaintiffs were only owed $28,026.96 of the total $250,000 in building coverage available under the Policy.  (Id. at 1.)  The letter further stated, "[y]ou should have received a copy of the adjuster's report from the

---

[2] FEMA Acting Ass't Admin, Memorandum W-22012 at 1, FEMA (Oct. 6, 2022), https://nfipservices. floodsmart.gov/sites/default/files/w-22012.pdf.

[3] As this Court recently held, a denial letter issued on an unsigned adjuster's report subject to Memorandum W-22012 suffices for a claim to ripen – no subsequent filing of a proof of loss is needed.  Hawk v. Hartford Ins. Co. of the Midwest, No. 2:24-CV-823-JES-NPM, 2025 WL 326668, at *6–7 (M.D. Fla. Jan. 29, 2025) (Steele, J.).

adjuster, and discussed any issues, explaining the basis for the enclosed payments. Please carefully review the report and contact your adjuster to discuss any questions . . . If you have any questions, have additional documentation for us to review, or need additional assistance, please contact your adjuster or our claim representative at (800) 765-9700." (Id. at 2.)

The March 2023 Letter also informed Plaintiffs that FCIC had rejected their coverage requests for certain building items and personal property located below the lowest elevated floor. (Id. at 1.) Those requests, FCIC explained, were "**Deni[ed]**." (Id.) (emphasis added). FCIC cited the following Policy language to justify the denial:

> Section III. A. Coverage A – Building, III. Property Insured, 8. Items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in [the listed zones], or in a basement regardless of the zone. Coverage is limited to the following:
>
> > a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a powersource: (1) Central air conditioners; (2) Cisterns and the water in them; (3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing; (4) Electrical junction and circuit breaker boxes; (5) Electrical outlets and switches; (6) Elevators, dumbwaiters, and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987; (7) Fuel tanks and the fuel in them; (8) Furnaces and hot water heaters; (9) Heat pumps; (10) Nonflammable insulation in a basement; (11) Pumps and tanks used in solar energy systems; (12)

- 5 -

> Stairways and staircases attached to the building, not separated from it by elevated walkways; (13) Sump pumps; (14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system; (15) Well water tanks and pumps; (16) Required utility connections for any item in this list; and (17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building. b. Clean-up.
>
> [Section III.] B. Coverage B – Personal Property...3. Coverage for items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in [the listed zones], or in a basement, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source: a. Air conditioning units, portable or window type; b. Clothes washers and dryers; and c. Food freezers, other than walk-in, and food in any freezer.

(Id. at 1–2.)

The Letter also stated, as required by Memorandum W-22012, that by accepting payment, Plaintiffs were not waiving any of their rights to seek "further payments" under the Policy. (Id. at 2) It explained that Plaintiffs could request "an additional payment in accordance with the terms and conditions of the [SFIP]" if (1) they discovered "additional flood damage that was not included in the adjuster's estimate," or (2) "the cost to repair the flood damage exceeds the adjuster's estimate." (Id.)

Appended to the March 2023 Letter was a form entitled "Policyholder Rights" which notified Plaintiffs of their options following FCIC's partial denial of their claim. (Id. at 3.) Those options were to administratively appeal the decision or to "file

- 6 -

suit . . . **within one year** of when your insurer **first denied** all **or part** of your claim." (Id.) (emphasis added).

At some point in the next few months, Plaintiffs submitted an "estimate" and an "executed" Proof of Loss seeking additional payments of $89,096.29. (Doc. #14-3, p. 1.)

On June 7, 2023, FCIC sent Plaintiffs another Letter (the "June 2023 Letter") informing them that their estimate and proof of loss were "**being denied**." (Id.) (emphasis added). FCIC explained that the estimate was "not supported with any documentation [of] the amounts and items claimed" and "include[d] many items that do not meet the [SFIP] and NFIP regulations for coverage." (Id.) FCIC quoted the same language cited in the March 2023 Letter from Sections III.A and III.B of Plaintiffs' Policy. (Id. at 1-3.) FCIC then noted that if Plaintiffs disagreed with "**our decision to deny/reject your claim, in whole or part**," they had a right to appeal the decision. (Id. at 3.) The June 2023 Letter also attached a "Policyholder Rights" form, reminding Plaintiffs of the one-year limitations period triggered when "your insurer first denied all or part of your claim." (Id. at 5.)

### III.

On December 2, 2024, Plaintiffs filed a one count breach-of-insurance-contract claim against FCIC. (Doc. #9, pp. 3-4.) FCIC moves to dismiss the breach-of-contract count under Rule 12(b)(6) because Plaintiffs' lawsuit was not filed within one year of either

- 7 -

of FCIC's partial denials in March 2023 or June 2023 and is therefore barred by the statute of limitations. The applicable statute of limitations provides:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 (emphasis added). A similar one-year limitation period appears in Part VII.O of the SFIP: "If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim." 44 C.F.R. Pt. 61, App. A(1), Art. VII(O). See Hawk v. Hartford Ins. Co. of the Midwest, No. 2:24-CV-823-JES-NPM, 2025 WL 326668 (M.D. Fla. Jan. 29, 2025) (Steele, J.); Martini, v. American Bankers Ins. Co., No. 2:24-CV-904-JES-KCD, 2025 WL 1018394 (M.D. Fla. Apr. 4, 2025) (Steele, J.); Mercer v. American Bankers Ins. Co., No. 2:24-CV-882-JES-NPM, 2025 WL 1018390 (M.D. Fla. Apr. 4, 2025) (Steele, J.).

It is undisputed that there were partial denials of the claim in March 2023 and June 2023, and the lawsuit was filed on December

2, 2024. The present lawsuit was filed twenty-one months after the March 2023 Letter and eighteen months after the June 2023 Letter. Therefore, the lawsuit is barred by the statute of limitations. The case is thus dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendant First Community Insurance Co.'s Motion to Dismiss Under Rule 12(b)(6) (Doc. #14) is **GRANTED**.

2. The Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk shall enter judgment accordingly, terminate all pending deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  9th  day of April 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record